35

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

OCT 15 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ROBIN ROY TALIANICICH, | § § § | |
| Plaintiff(s), | § | |
| v. | § § | CIVIL ACTION NO. B-97-121 |
| AMFELS, INC., | § § | |
| Defendant(s). | § | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BE IT REMEMBERED that on October 14, 1999, the Court, having considered the case file, motions, and argument of counsel, GRANTED Defendant's Motion for Partial Summary Judgment (Dkt. No. 29).

Mr. Talianicich ("Plaintiff"), a former tugboat captain at the Amfels, Inc. ("Defendant") shipyard, brings this wrongful discharge case under three theories. First, Plaintiff claims that he was terminated in violation of 46 U.S.C. §2114 for reporting or attempting to report safety violations to the United States Coast Guard. Second, Plaintiff brings a Texas state law claim for wrongful discharge in retaliation for refusing to perform illegal acts. Third, Plaintiff asserts a general maritime law claim for wrongful discharge under a newly created public policy exception to the employment-at-will doctrine. Plaintiff was terminated on August 15, 1996, allegedly for insisting that Defendant follow the safety regulations encompassed in Title 46. Plaintiff filed suit in this Court on May 27, 1997. Now before the Court is Defendant's Motion for Partial Summary Judgment. Defendant seeks summary judgment on the second and third claims but not the first. For the reasons that follow, Defendant's motion is GRANTED.

1

## I. FACTUAL SUMMARY

The following factual summary is derived from undisputed facts, facts conceded for summary judgment purposes, and any reasonable inference drawn in Plaintiff's favor. Plaintiff was a tugboat captain at Defendant's shipyard. He started work there on a part time basis in December of 1993, became a full-time employee in July of 1994, and was discharged in August of 1996. Plaintiff admits that he was an at-will employee without an employment contract. (Pl.'s Dep. at p. 8, l. 1-3).

Despite owning and operating two tugboats, Defendant only employed one licensed tugboat captain, the Plaintiff. As a result, the Defendant's second tugboat was operated by deckhands and other employees not licensed to captain a tugboat. (Coast Guard Letter, Ex. 7 to Pl.'s Second Am. Resp. Def.'s Mot. For Summ. J.) Furthermore, tugboat crews and operators worked shifts longer than twelve hours during a twenty-four hour period. (*See id.*) Both are violations of safety regulations under Title 46 of the United States Code.

The Plaintiff brought to the attention of his superiors these safety violations.[1] They assured Plaintiff that appropriate steps would be taken. In actuality, none were taken. Plaintiff then threatened to report these violation to the United States Coast Guard. In 1995 and on at least one other occasion, Plaintiff did report the violations to Chief Warrant Officer Charles French of the Coast Guard. Eventually, Plaintiff refused to continue violating the law.

The final episode of Plaintiff's employment occurred in August of 1996. Mr. Booker, Amfel's Dock Master and Plaintiff's immediate superior, ordered Plaintiff to inspect and report on the status of a derrick barge. After approximately a week, Mr. Booker inquired over the marine radio whether Plaintiff had completed the inspection and report. Plaintiff responded that he had not and, in the course of the conversation, informed Mr. Booker that inspecting barges did not fall within the duties of a tugboat captain. Mr. Booker terminated

---

[1] The following facts are taken from Plaintiff's deposition testimony, unless otherwise noted.

2

Plaintiff's employment. Plaintiff contends he was terminated for refusing to follow orders to violate the law. (Pl.'s Compl. ¶ 6). On the other hand, Amfels claims Plaintiff was terminated for refusing to perform a job assignment. (Def.'s Original Answer ¶ 12).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The nonmoving party bears the burden of setting forth specific facts showing that there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Existence of a factual dispute will not defeat a motion for summary judgment unless the disputed facts might affect the outcome of the lawsuit under the governing law. *See id.* at 247-48.

The moving party bears the initial burden of informing the Court of the issues and the evidence that supports summary judgment. *See Celotex*, 477 U.S. at 323. Then the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact and all justifiable inferences are drawn in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87 (quoting Fed. R. Civ. P. 56 (c)).

## III. PLAINTIFF'S STATE LAW CLAIM FOR WRONGFUL DISCHARGE

A. *Texas Law: Employment-at-will and exceptions.*

Texas adheres to the general rule that the employer-employee relationship is terminable at-will. *See Mayfield v. Lockheed Eng'g & Sciences*, 970 S.W.2d 185, 186 (Tex. App.–Houston [14th Dist.] 1998); *Sabine Pilot Service, Inc. v. Hauk*, 687 S.W.2d 733, 734-35 (Tex. 1985) (announcing only a narrow exception to the general rule of the employment-at-will doctrine). In the absence of an employment contract specifically to the contrary, "employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1997) (citations omitted).

3

Employment-at-will is a rigid rule, and there are only limited exceptions. In *Sabine Pilot*, the Texas Supreme Court announced one exception. "That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot*, 687 S.W.2d at 735. *Sabine Pilot* and its progeny have consistently defined an illegal or criminal act as an act carrying criminal, not simply civil, penalties. "The *Sabine Pilot* exception applies only if the plaintiff was forced to choose between committing a criminal act and being discharged." *Ran Ken, Inc. v. Schlapper*, 963 S.W.2d 102, 105 (Tex. App.–Austin 1998).

The Texas courts have generally not been willing to extend the exception beyond its narrow banks. One court extended the *Sabine* exception to protect those employees discharged for attempting in good faith to determine whether an act they were ordered to perform would be illegal. *See Johnston v. Del Mar Distrib. Co. Inc.*, 776 S.W.2d 768 (Tex. App.–Corpus Christi 1989, writ denied). However, this holding has been questioned and is not the accepted law in Texas. *See Mayfield*, 970 S.W.2d at 187-88 (questioning the holding of *Johnston*). Considering the reluctance of the Texas Supreme Court to extend the *Sabine Pilot* exception, this Court is constrained to follow the narrow exception allowed in Texas and will not extend the exception.

B.  *Texas Law applied to the facts.*

Plaintiff alleges that he was terminated for refusing to follow unlawful orders, that is orders which would expose him to criminal liability. Plaintiff was never placed in the position of choosing between his employment and committing an act which would expose him to criminal liability. Plaintiff was ordered to perform, did perform, and complained about performing acts violating safety regulations found in Title 46. These are not criminal acts.

a.  *Assignment to inspect derrick barge and report.*

The act Plaintiff was ordered to perform – inspecting and reporting on the status of repairs performed on the derrick barge – does not constitute a criminal act. Whether Plaintiff had actually completed a portion of the assignment and was working toward

4

completing the assignment is a genuine fact issue. However, that issue is not material because Defendant clearly could have terminated Plaintiff for refusing to perform a lawful assignment.

      b.    *Safety violations: Overworking seaman and using unlicensed captains.*

Likewise, operating a tugboat for more than twelve hours during a twenty-four hour period would not subject the Plaintiff to criminal liability. 46 U.S.C. §8104 (h) prohibits a licensed tugboat captain from working for more than twelve hours within a consecutive twenty-four hour period. A violation subjects the owner, charterer, or managing operator to "civil penalties of $10,000." 46 U.S.C. §8104 (j). The seaman is not penalized at all; in fact, the seaman's earned wages are specifically protected. The statute punishes the employer, not the employee.

Moreover, operating one tugboat while another tugboat is operated by an unlicensed operator would not subject the Plaintiff to criminal liability. 46 U.S.C. §8904 (a) requires a tugboat over twenty-six feet in length to be operated by a licensed captain, and a violation is punishable by "a civil penalty of not more than $25,000." 46 U.S.C. §8906. As a licensed captain, Plaintiff would not be liable for the civil penalty incurred by the unlicensed operation of a second tugboat. Instead, it would be the "owner, charterer, managing operator, agent, master, or individual in charge of a vessel operated in violation of this chapter or a regulation prescribed under this chapter [who] is liable to the United States Government . . . ." *Id.* A licensed captain operating in unison with an unlicensed captain aboard another tugboat is not subject to civil liability, much less criminal liability.

Neither a violation of §8104 (overworking seaman) nor a violation of §8904 (using unlicensed captains) subjects Plaintiff to criminal liability. Therefore, Plaintiff was never put in the position of choosing between his employment and committing an unlawful act. These safety violations are not criminal acts and do not support a *Sabine Pilot* claim.

5

### c. *Criminal liability statutes.*

Plaintiff asks the Court to look to 46 U.S.C. §2302 (b) and 46 U.S.C. §1115 to support a finding and conclusion that the required illegal act and criminal violation fits the *Sabine Pilot* exception. Section 2302 (b) makes "operating a vessel in a grossly negligent manner that endangers the life, limb, or property of a person . . . a class A misdemeanor." Plaintiff believes that Defendant's orders to violate safety statutes were orders to commit acts of gross negligence such as to involve the criminal penalties of §2302 (b). However, as discussed *supra*, these safety violations carry civil penalties, and there is no indication that such safety violations rise to the level of negligence, gross negligence, or a criminal act for purposes of applying the *Sabine Pilot* exception.

Unlike §2302 (b) which makes gross negligence criminally sanctionable, 46 U.S.C. §1115 criminalizes any "misconduct, negligence, or inattention" by which "the life of any person is destroyed." Under Section 1115, conduct that results in death is subject to criminal penalties. The section focuses as much on the result as the conduct. Nobody died as a result of the safety violations alleged. There simply is no §1115 violation.

Plaintiff cannot bootstrap violations of safety regulations into criminal acts by theorizing about what might have happened. Whether a jury would find Plaintiff negligent in the event of a death caused by violations of safety regulations is immaterial. Under Plaintiff's theory, employees who refuse to violate any safety regulation are protected from termination. That is not the law. The question is whether Defendant ordered Plaintiff to commit an act which by itself would subject the Plaintiff to criminal liability. The law protects an employee who refuses to follow an unlawful order -- an order that if performed would subject the employee to criminal liability. Defendant only ordered Plaintiff to violate safety regulations punishable by civil penalties.

### C. *No genuine issue of material fact to support a* Sabine Pilot *claim.*

At worst, Defendant put Plaintiff in the position of choosing between civil penalties and his employment. However, a review of the statutes that Plaintiff may have violated suggests that Defendant, not Plaintiff, bore most of the risk of being fined.

6

What penalties Plaintiff did risk are not sufficient to fall within the criminal act exception of *Sabine Pilot*. In light of the fact that Texas courts are unwilling to extend the *Sabine Pilot* exception, this Court will not presume to expand settled Texas law. No genuine issue of material fact exists concerning Plaintiff's state law claim.

## IV. GENERAL MARITIME LAW

A.   *Jurisdiction and applicable law.*

Plaintiff's reliance on *Borden v. Amoco Coastwise Trading Co.*, 985 F. Supp. 692 (S.D. Tex. 1997) is ironic in that most of the similarities between this case and *Borden* are limited to the pleading irregularities rather than the facts or law. Plaintiff has never specifically invoked the Court's admiralty jurisdiction; however, he argues for the extension and application of general maritime law to the facts of this case. Because the subject matter of Plaintiff's case "bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction," *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir. 1985), this Court will apply general maritime law to Plaintiff's claim.

B.   *General maritime law: Employment-at-will and exceptions.*

General maritime law starts from the same premise as Texas state law: the employer-employee relationship is at-will. "In the absence of a contractual provision specifying a definite term or voyage during which a seaman will be employed, the seaman's employment is 'terminable at will by either party.'" *Smith v. Atlas Off-Shore Boat Services, Inc.*, 653 F.2d 1057, 1060 (5th Cir 1981) (quoting *Findley v. Red Top Super Markets, Inc.*, 188 F.2d 834, 837 n.1 (5th Cir. 1951), *cert. denied* 342 U.S. 870 (1951)). In familiar terms, an employer may discharge an employee for a good cause, a bad cause, or no cause at all. *See id.*

a.   *Bases for exceptions to at-will employment.*

Federal courts applying general maritime law have carved out some public policy exceptions to the employment-at-will doctrine. Public policy exceptions have been applied in three circumstances: "when an employee is discharged for 1) refusal to commit an unlawful act, 2) performance of an important public obligation, or 3) exercise

7

of a statutory right." *Feemster v. B-J Titan Services Co.*, 873 F.2d 91, 93 (5th Cir. 1989). In the case before the Court, Plaintiff argues for the application of the public policy exception based on a refusal to commit an unlawful act.

    b.    *Public policy exception based on statutory right or private right of enforcement.*

The Fifth Circuit has joined the growing number of courts recognizing a public policy exception to the employment at will doctrine. The *Smith* Court concluded "that a discharge in retaliation for a seaman's exercise of his legal right to file a personal injury action against the employer constitutes a maritime tort." *Smith*, 653 F.2d at 1063. In crafting this exception, the Court was careful to limit the cause of action it created to a retaliatory discharge for filing or threatening to file a personal injury suit. *See id.* at 1065. An employee has a wrongful discharge cause of action when terminated for exercising a statutory right.

An employer cannot put a seaman in the position of choosing between his employment and his Jones Act personal injury claim. "The right to discharge at will should not be allowed to bar the courthouse door." *Id.* at 1062. A statutory right or a private right of enforcement invokes a public policy concern that outweighs the employment-at-will doctrine.

    c.    *No public policy exception for refusal to violate a safety regulation.*

In *Feemster*, the Fifth Circuit addressed whether a seaman has a wrongful discharge claim when discharged for refusing to perform an unlawful act. The Court declined to find a public policy exception for a seaman who refused to follow an order to violate a Title 46 safety regulation. Feemster had been ordered to push a barge from Venice, Louisiana, to Lake Paige, Louisiana, an eighteen hour trip. The trip would violate 46 U.S.C. §8104 (h) which requires individuals aboard a tugboat to work twelve or fewer hours within any twenty-four hour period. When Feemster refused to perform the assignment, B-J Titan Services discharged him. The Court held that Feemster did not have a wrongful discharge claim.

8

Whereas the *Smith* opinion was grounded in a seaman's exercise of a statutory right, namely filing a personal injury suit, *Feemster* involved an exception based on a refusal to commit an unlawful act. *See id.* at 93. This distinction was crucial to the court's decision. First, the Court noted that the Jones Act provides a private right of action for personal injuries; whereas, §8104 does not provide a private right of action. *See id.* Second, the Coast Guard, not the seaman, is the appropriate mechanism for enforcing §8104. *See id.* (noting the legislative history of the particular statute). Third, the seaman has a voice in the enforcement process – the seaman can inform the Coast Guard of the safety violation. *See id.* at 93-94.

*Feemster* confirmed the *Smith* holding that a seamen who has a statutory right of action or enforcement cannot be terminated solely for exercising that right. However, because the safety violation at issue in *Feemster* - overworking a seaman - was not enforceable by a seaman, the Court held that *Feemster* did not have a cause of action for wrongful discharge.

  d. *Public policy exception based on §10908.*

One Court in the Southern District of Texas has extended a public policy exception to the employment-at-will doctrine based on a refusal to perform an unlawful act. *See Borden,* 985 F. Supp. at 692. A captain was terminated for twice refusing to sail his tugboat and tanker containing a highly toxic chemical into hurricane conditions. He was discharge ostensibly for disobeying orders to sail his ship and for increasing costs by delaying departures.

Drawing on the *Sabine Pilot* doctrine and state law to supplement general maritime law, the Court created a cause of action for wrongful termination when a seaman is terminated for refusing to violate a federal statute that makes it a felony to send an unseaworthy vessel to sea. *See id.* at 699. Unlike *Feemster* in which the Plaintiff refused to violate a safety regulation, in *Borden* the captain refused to violate §10908 of Title 46 which provides criminal penalties for a captain who sends an unseaworthy vessel to sea.

9

The threshold question is "whether public policy considerations in particular factual circumstances are sufficient to override the at-will employment doctrine." *Id.* at 697. Recognizing the strong public policy of protecting lives and the sanctity of the coastline "coupled with the public policy implications surrounding §10908," the Court held that the facts were sufficient to invoke a public policy exception to at-will employment. *Id.* at 698. To prevail under this newly created cause of action, the seaman must show "1) that he refused to sail because he reasonably believed that to do so would be in violation of §10908; 2) that he was given a clear directive to violate the law; and 3) that he was fired solely because of his refusal to do so." *Id.* at 700. A seaman who refuses to follow an order to send an unseaworthy vessel to sea - a criminal violation - has a cause of action for wrongful discharge.

A Federal District Court in California has likewise relied on §10908 to find a public policy exception to the at will employment doctrine. *See Seymore v. Lake Tahoe Cruises, Inc.*, 888 F. Supp. 1029 (E.D. Cal. 1995). A captain was terminated for refusing to sail a five hundred passenger glass bottom boat. The boat was leaking severely and under a Coast Guard order not to sail. The Court distinguished between circumstances in which a regulatory action can be easily enforced by Coast Guard action and a situation in which an important public policy protects a seaman from wrongful discharge. *See id.* at 1034-35. Obviously, sailing a sightseeing glass bottom boat that is leaking is not a situation in which a captain should be expected to sail and complain to the Coast Guard later. *See id.* at 1035.

e.   *Summary of general maritime law.*

Seaman are employees-at-will unless hired under a contract specifying a term of employment or a voyage to be undertaken. A seaman who refuses to perform a lawful act is not protected from at-will employment. Likewise, a seaman who refuses to perform an unlawful act punishable by civil penalties is not protected. However, a seaman who refuses to perform an act violating §10908, punishable by criminal penalties, is protected. The courts have recognized only narrow public policy exceptions to the general maritime rule of employment-at-will.

10

C.  *General maritime law applied to the facts.*

   a.   *Plaintiff's* Borden *claim fails.*

Plaintiff asserts that there are genuine issues of material facts concerning his general maritime claim. Plaintiff's *Borden* claim fails for two reasons. First, as addressed *supra,* Plaintiff was never subjected to criminal liability. Second, a *Borden* claim is based on §10908 and requires that the unseaworthy vessel actually be sent to sea. Plaintiff was never sent to sea. Therefore, Plaintiff does not have a *Borden* claim.

*Borden* is based on *Sabine Pilot* and requires that the Plaintiff receive "a clear directive to violate the law." *Borden*, 985 F. Supp. at 700. A *Borden* claim is specifically limited to a directive to violate §10908. The summary judgment evidence is that Plaintiff was not given a clear directive to violate §10908, and he was never ordered to perform acts which could be characterized as violating §10908. Plaintiff never risked criminal liability under §10908.

Moreover, Plaintiff cannot successfully make a *Borden* claim because the wrongful discharge claim announced in *Borden* is predicated on 46 U.S.C. §10908 making it a violation to send an unseaworthy vessel to sea. The undisputed summary judgment evidence is that the Amfels shipyard and the Port of Brownsville where Plaintiff operated a tugboat are inland waterways. Therefore, Plaintiff was never sent to sea as required by §10908.

Even if Plaintiff were sent to sea, his *Borden* claim fails. Neither the overworking of seaman nor the use of unlicensed tugboat operators is "sufficient to override the at-will doctrine." *Borden*, 985 F. Supp. at 697. These facts, unlike the egregious facts in *Borden* and *Seymore*, do not raise the same public policy concerns.

There simply is no summary judgment evidence that fits within the *Borden* public policy exceptions to employment-at-will. Plaintiff was never ordered to commit a criminal violation. He was never directly ordered to violate §10908. Most importantly, he was never sent to sea, a necessary element of a §10908 violation. Therefore, Plaintiff's *Borden* claim must fail.

11

### b. *The Court will not extend the public policy exception.*

Plaintiff also urges this Court to create a public policy exception to the employment-at-will doctrine for an employee who refuses to follow an order to violate a safety regulation in Title 46 of the United States Code. Plaintiff asks the Court to look beyond the civil versus criminal penalties analysis and hold that the risk of any penalty is sufficient grounds for a seaman to refuse to follow an order. Such an exception would be in direct contradiction to *Feemster*. It would also contradict *Borden*. The *Borden* Court acknowledged that any exception must be based on a refusal to perform an unlawful order. *See id.* at 700 n.9. Moreover, such an exception would swallow the rule of at-will employment. A seaman confronted with an order to violate the law has a simple and effective recourse – he should report to the Coast Guard any instruction to violate a safety regulation and should seek shelter under §2114.

## V. GENUINE ISSUES NOT MATERIAL

Plaintiff does raise some genuine issues; however, they are not necessarily material. Whether the Plaintiff was terminated for insubordination or for insisting that "the company follow the law" is immaterial. Under *Feemster*, the employer has the right to terminate an employee-at-will for either of these reasons. Even if the evidence is uncontroverted that Plaintiff was not trained to inspect derrick barges and even if Plaintiff never "flat refused" to inspect the derrick barge, these facts are likewise immaterial. Neither of these issues is related to the wrongful discharge cause of action recognized under general maritime law.

Although the assertions that Plaintiff was terminated for refusing to work more than twelve hours in a twenty-four hour period or for refusing to work with an unlicensed tugboat operator do raise genuine issues of fact, they too simply are immaterial. Under the *Feemster* holding, an employer may terminate an employee for refusing to work more than twelve hours within a twenty-four hour period. None of the controverted factual issues are material to either the *Sabine Pilot* state law or the *Borden* general maritime law exception to the employment-at-will doctrine.

12

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Dkt. No. 29) is GRANTED.

DONE at Brownsville, Texas, this ___14___ day of October 1999.

_____
Hilda G. Tagle
United States District Judge